IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 23, 2010

## DONALD RAY JONES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hancock County**
**No. 06-CR-2663      John F. Dugger, Jr., Judge**

---

**No. E2009-02083-CCA-R3-PC - Filed February 8, 2011**

---

The Petitioner, Donald Ray Jones, pleaded guilty to two counts of first degree murder and received concurrent terms of life with the possibility of parole. The Petitioner filed a timely petition for post-conviction relief and, after a hearing, the post-conviction court denied relief. In this appeal, the sole issue that the Petitioner raises is that he was denied effective assistance of counsel because his Trial Counsel failed to request insanity and competency evaluations. After our review, we conclude that the Petitioner's appeal should be dismissed because his notice of appeal was not timely filed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

James F. Taylor, Rogersville, Tennessee, for the appellant, Donald Ray Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Doug Godbee, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### Factual Background

On or around May 24, 2001, Ance "Pete" Pratt and Rebecca Pratt were shot and killed in their Hancock County residence. Approximately $280,000 and a large quantity of marijuana were stolen from their home at the same time. The case went unsolved until August 2003, when the Drug Enforcement Agency received information about the murders from the estranged wife of one of the Petitioner's co-defendants. In July 2004, a Hancock

County grand jury issued a six-count indictment alleging that the Petitioner committed six counts of first degree felony murder.[1] The State gave the Petitioner notice that it intended to seek the death penalty. On September 16, 2005, the Petitioner pleaded guilty to two counts of first degree felony murder and was sentenced to concurrent life sentences with the possibility of parole. He filed a timely petition for post-conviction relief, and the post-conviction court conducted a hearing on May 22, 2009.

The Petitioner testified that investigator Mike Cohan and mitigation specialist Jessica Johnson worked on his case with Trial Counsel. He recalled that he met with Ms. Johnson several times and that she interviewed him about his childhood and his mental health issues. The Petitioner testified that he received mental health treatment in Texas as early as when he was eight years old. He recalled that he also received treatment when he was about twelve years old and that, after he attempted to commit suicide when he was sixteen years old, his mother institutionalized him. The Petitioner could not recall the details of his mental health treatments after the age of sixteen, however, he maintained that he regularly went to various mental health institutions "to get medicine to get sedated." He also stated that, at the time authorities arrested him in the instant case, he was incarcerated in Texas because of a drug charge and was serving his sentence at a mental health hospital. The Petitioner testified that he fully informed Ms. Johnson of his mental health history during their various meetings. He claimed that he told both Trial Counsel and Ms. Johnson that he wanted a mental evaluation.

The Petitioner testified that, on the date of the offense—May 24, 2001, he did not feel "mentally healthy enough" to understand what happened and the consequences of his actions. The Petitioner also recalled that he told his defense team that, when he was transported from Texas to Tennessee, he was taking Lithium, Benadryl, Depakote, and Elavil. He testified that, at the time he pleaded guilty, he felt he was "mentally incapable of answering the questions" asked by the court. He also said that he did not feel mentally competent to work with his defense team. When asked why he replied in the negative when the trial court asked him during his plea whether there was "[a]nything about [his] health, physical or mental condition that would cause [him] not to understand these proceedings," the Petitioner said that he was "just real nervous."

Trial Counsel testified that he had been practicing law for thirty-three years and had previous experience working on death penalty and first degree murder cases. He said that he met with the Petitioner numerous times and "had no problems whatsoever communicating with" him. He also recalled that he did not think the Petitioner had any trouble understanding

---

[1] Counts 1, 3, and 5 referred to victim Ance "Pete" Pratt and alleged that the killing was committed in the perpetration of aggravated burglary, theft of money, and theft of a GMC truck and marijuana, respectively. Counts 2, 4, and 6 alleged the same underlying acts, but referenced victim Rebecca Pratt.

what Trial Counsel was discussing with him. Trial Counsel elaborated, "In my opinion, there wasn't any defense of insanity to this—these charges. I don't believe there's any defense to the charges themselves based upon [the Petitioner's] mental condition at the time." He testified that the Petitioner never asked him for a mental evaluation, nor was such a request by the Petitioner communicated to him by anyone else.

Regarding the plea agreement, Trial Counsel recalled that the Petitioner "was adamant from the very beginning that he was prepared to work out a plea agreement if he could avoid the death penalty." Trial Counsel testified that he was aware that the Petitioner had past mental health treatment and, if they had proceeded to trial, he would have "requested approval by the [c]ourt for some sort of mental evaluation for mitigation evidence," which he thought might have been helpful at the sentencing phase of the trial. When asked if Mr. Cohan or Ms. Johnson would have brought a competency issue to his attention, Trial Counsel said that they likely would have. However, he continued,

> I certainly do not believe that there was anything that they brought to my attention that would rise to the level of offering a defense to the charges against [the Petitioner] or that would bear upon his ability to understand the proceedings or to understand the entry of a plea of guilty.

Ms. Johnson testified that, after earning her master's degree in clinical social work, she went to work as a mitigation specialist with Michael Cohan Investigations. She described her role in the Petitioner's case as follows:

> I met with [the Petitioner] on several occasions at Hancock County Jail, also collecting documentation, any educational, medical, psychiatric, employment records that I could collect on him. It was kind of an ongoing process. Generally, I would go out and talk with witnesses, family members, anybody who could give me information as far as [the Petitioner's] social history, upbringing, that sort of thing.
>
> In [the Petitioner's] case, I met with him on several occasions, collected records, and I also took a trip to Texas where I met with several witnesses down there.

She later explained that her "work primarily would come in during a sentencing hearing should a capital case get to that point."

Ms. Johnson recalled that the Petitioner had a history of both mental health and substance abuse issues. She said that "some of the Texas Department of Corrections records

indicated a diagnosis of schizo-affective disorder, possibly bipolar," as well as substance abuse disorder. However, she said that she did not think the Petitioner had any "active" diagnoses at the time she was working on his case. Ms. Johnson recalled that the Petitioner told her that he had been having some auditory hallucinations, but she said that it was difficult to determine whether they were caused by mental illness or his "really, really extensive history of using drugs."

Ms. Johnson stated that she believed that the Petitioner was taking Haldol and Lithium at the time he was transferred from Texas to Tennessee. She recalled that the Petitioner told her that Tennessee prison officials were giving him the same medication Texas prison officials gave him and that he appeared to be "pretty heavily medicated." She testified that the Petitioner seemed lethargic, shuffled his feet, had a flat affect, and sometimes seemed like he was in a trance. Ms. Johnson elaborated, "[H]e was able to answer questions and he was able to follow along with what we were doing, but he seemed a bit sedated." Ms. Johnson testified that she did not recall the Petitioner ever telling her that he wanted a mental health examination.

Mr. Cohan testified that he worked as a private investigator on the Petitioner's case. He recalled that he met with the Petitioner at the Hancock County Jail and that the Petitioner "seemed fine." He said the Petitioner was able to talk with him and understand what Mr. Cohan was talking to him about. Mr. Cohan recalled, "It was very clear from [the Petitioner] from day one that he wanted to avoid the death penalty."

Mr. Cohan testified that, on September 13, 2005, he accompanied Trial Counsel to discuss the plea bargain with the Petitioner. He recalled that Trial Counsel went over the plea bargain with the Petitioner line-by-line and that the Petitioner said he understood it. He also said that the Petitioner indicated that he wanted to plead guilty and that he even asked Trial Counsel about whether he would get jail credit for the time he served in Texas before being transferred to Tennessee. Mr. Cohan testified, "I had no reason to believe that he didn't understand everything we were discussing."

When asked if the Petitioner ever appeared sedated, Mr. Cohan replied, "Not that I recall. We knew he was medicated on some level, but not to the point that I felt he was hampered in responding to us." He acknowledged that the Petitioner "moved slowly," but said that he did not appear to be in a trance. Mr. Cohan testified that he did not observe anything that caused him to question the Petitioner's mental health status and that he did not recall the Petitioner ever requesting a mental health evaluation.

On August 21, 2009, the post-conviction court filed a written order finding that the Petitioner failed to prove by clear and convincing evidence that he was denied effective

assistance of counsel and dismissed the Petitioner's petition for post-conviction relief as a matter of law. The Petitioner filed his notice of appeal on September 25, 2009.

**Analysis**

In this appeal, the Petitioner asserts that he was denied effective assistance of counsel because Trial Counsel failed "to request insanity and competency evaluations." Initially, however, we must address the State's argument that the Petitioner's appeal should be dismissed because his notice of appeal was filed more than thirty days after the post-conviction court denied his petition for relief.

Rule 4(a) of the Tennessee Rules of Appellate Procedure provides that a notice of appeal "shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from." However, Rule 4(a) also states that, in criminal cases, "the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Upon review, as we will address herein, we conclude that the interest of justice does not require that we waive the timely filing of the Petitioner's notice of appeal.

First, we note that the Petitioner's brief does not acknowledge that his notice of appeal was untimely filed, nor does he argue that the late filing should be waived in the interest of justice. Second, the Petitioner failed to respond to the State's argument that the appeal should be dismissed. Third, the Petitioner failed to present clear and convincing evidence that he was denied effective assistance of counsel.

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have

recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. To demonstrate prejudice, a defendant must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's

conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely <u>de novo</u> standard, with no presumption of correctness given to the trial court's conclusions." <u>Id.</u> (emphasis in original).

The Petitioner failed to show by clear and convincing evidence that he was denied effective assistance of counsel. Although he alleges that his Trial Counsel should have requested that he receive a mental evaluation, he presented no evidence besides his own testimony that he was prejudiced by his counsel's failure to do so. Moreover, Trial Counsel testified that he did not believe that the Petitioner had a defense to the offenses based upon his mental condition at the time. He also recalled that he had no trouble communicating with the Petitioner and that the Petitioner did not have any difficulty understanding him. Ms. Johnson testified that she researched the Petitioner's mental health history and that, although he had previously been diagnosed with schizo-affective disorder and substance abuse disorder, he did not have any "active" diagnoses at the time she was working on his case. She said that sometimes the Petitioner "seemed a bit sedated," but "was able to answer questions and he was able to follow along with what we were doing." Mr. Cohan also testified that he did not observe anything to cause him to question the Petitioner's mental health status and that the Petitioner did not seem to have any trouble understanding what they discussed. Based upon our review of the record, we conclude that the interest of justice does not require that we waive the timely filing of the Petitioner's notice of appeal.

**Conclusion**

Based on the foregoing authorities and reasoning, we conclude that this appeal should be dismissed.

_____
DAVID H. WELLES, JUDGE